**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

RICHARD W.,[1]                          )
                                        )
            Plaintiff,                   )
                                        )
        v.                               )          Civil No. 3:19-cv-296–HEH
                                        )
ANDREW M. SAUL,                          )
Commissioner of Social Security,         )
                                        )
            Defendant.                   )
                                        )

## MEMORANDUM OPINION
**(Cross-Motions for Summary Judgment)**

Richard W. ("Plaintiff") applied for Social Security Disability and Supplemental

Security Income under the Social Security Act ("Act") on March 26, 2015. Plaintiff

alleged disability stemming from numerous physical impairments with a purported onset

date of September 10, 2012. The Social Security Administration ("SSA") initially denied

Plaintiff's claims on September 10, 2015, and affirmed the denial upon reconsideration

on November 17, 2015. Plaintiff requested a hearing in writing on January 12, 2016.

Thereafter, on August 18, 2017, an Administrative Law Judge ("ALJ") held a hearing and

denied Plaintiff's claims in a written decision on March 20, 2018. The ALJ concluded

that Plaintiff did not qualify as disabled under the Act because Plaintiff is able to perform

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of
the United States has recommended that, due to the significant privacy concerns in social
security cases, federal courts should refer to claimants by only their first names and last initials.

his past relevant work as a security guard. The Appeals Council denied Plaintiff's

request for review on February 25, 2019, rendering the ALJ's decision the final decision

of the Commissioner subject to review by this Court.[2]

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C.

§ 405(g), arguing that the ALJ erred by (1) finding that Plaintiff's prior work as a security

guard was past relevant work; and (2) rejecting the opinions of Dr. Powers, Dr. Monteiro,

and Toshal Thanawala, DPT, without providing legally sufficient reasons. (Pl.'s Mem.

Supp. Mot. Summ. J. at 3–8, ECF No. 15.) This matter now comes before the Court on

the parties' cross-motions for summary judgment.[3] The parties have submitted

memoranda supporting their respective positions, and the matter is now ripe for review.

For the reasons that follow, Plaintiff's Motion for Summary Judgment will be denied

(ECF No. 13), Defendant's Motion for Summary Judgment will be granted (ECF No. 16),

and the final decision of the Commissioner will be affirmed.

## I.   STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the court "will affirm

the Social Security Administration's disability determination 'when an ALJ has applied

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

[3] Plaintiff also filed a Motion to Remand on September 3, 2019 (ECF No. 14). Because the Motion to Remand is substantively duplicative of Plaintiff's Motion for Summary Judgment, the Court will address only the merits of the cross-motions for Summary Judgment and will accordingly deny as moot Plaintiff's Motion to Remand.

correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (second alteration in original) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings.

3

*Hancock*, 667 F.3d at 472. If substantial evidence in the record does not support the ALJ's determination, or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634–35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The claimant bears the burden of production and proof at steps one through four. *Hancock*, 667 F.3d at 472. However, at step five, the burden then shifts to the Commissioner. *Id.* at 472–73.

## II.   THE ALJ'S DECISION

On August 18, 2017, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. (R. at 45–78.) On March 20, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 16–26.) The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 16–26.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") between his alleged onset date of September 10, 2012, and his date last insured of December 31, 2017. (R. at 18.) At step two, the ALJ found that Plaintiff suffered from degenerative disc disease, stenosis, bulging discs status post laminectomy, right shoulder sternal clavicle (or joint dislocation status post distal clavicle resection), acromioplasty, and biceps tendonesis. (R. at 18–19.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

In assessing Plaintiff's reduced functional capacity, the ALJ found that Plaintiff could perform light work through the last date insured. (R. at 20.) The ALJ further determined that Plaintiff could "occasional[ly] climb ramps, stairs, ladders, ropes, and scaffolds, occasionally stoop, kneel, crouch, and crawl, and frequent[ly] reach over his head ]with the bilateral upper extremities." (R. at 20.) At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a security guard. (R. at 24.) Accordingly, the ALJ was not required to consider step five, ultimately determining that Plaintiff did not qualify as disabled under the Act. (R. at 26.)

## III.   ANALYSIS

### A. The ALJ's finding that Plaintiff could perform his past relevant work is supported by substantial evidence.

Plaintiff's first assignment of error on appeal challenged the ALJ's finding that his prior work as a security guard qualified as past relevant work. (Pl.'s Mem. at 3–5.) Specifically, Plaintiff claims that that he held this job as an accommodation from his charitable brother-in-law, who made special accommodations to allow him to remain in the job, including that Plaintiff:

> [R]ecieved assistance from other employees in performing his work; . . . was allowed to work irregular hours or take frequent rest periods; . . . was permitted to work at a lower standard of productivity or efficiency than other employees; . . . [and] was given the opportunity to work despite his impairments due to his familial relationship.

(*Id.* (citing 20 C.F.R. § 404.1573(c)).)  Accordingly, Plaintiff maintains that the presumption has been rebutted, even if his earnings from this employment created a presumption of SGA.  (*Id.*)  Defendant asserts that, after thoroughly considering the relevant factors and evidence presented, the ALJ properly concluded that Plaintiff's work as a security guard was past relevant work that Plaintiff could perform. (Def.'s Mot. Summ. Judgment and Br. Supp. at 1–2, 15–19, ECF No. 16.)

"Past relevant work" is defined as work that the claimant has performed "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." §§ 416.960(b)(1), 404.1565(a), 486.965(a); *see* SSR 82-62. The United States Court of Appeals for the Fourth Circuit has held that "in order to be classified as past relevant work, for the purpose of determining disability, the work

must have been substantial gainful activity." *Connolly v. Bowen*, 879 F.2d 862 (4th Cir. 1989) (unpublished table decision). "Substantial gainful activity is work activity that is both substantial and gainful." § 404.1572. Work activity is substantial when it involves significant physical or mental activities, meaning the activities are "useful in the accomplishment of a job and have economic value." § 404.1572(a); SSR 83-33. Gainful work activity is "usually done for pay or profit." § 404.1572(b); SSR 83-33.

Generally, earnings derived from the work activity are the primary consideration in evaluating SGA. § 404.1574(a)(1). If substantial earnings are made from the work activity, it will ordinarily constitute SGA. *Id.* For the calendar years of 2010 and 2011—the years in which Plaintiff worked as a security guard—the Substantial Gainful Activity Earnings Guidelines specify that earnings of an employee are substantial if the amount averages more than $1,000.00 per month. *See* Program Operations Manual System ("POMS") § DI 10501.015(B), https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited August 21, 2020); R. at 195, 245. A presumption of SGA arises if a claimant's monthly earnings exceed the Guidelines. *See* § 404.1574(a)(1); *Payne v. Sullivan*, 946 F.2d 1081, 1083 (4th Cir. 1991); *Martin S. v. Berryhill*, No. 6:18-CV-62, 2019 WL 3851140, at *2 (W.D. Va. July 29, 2019); *Sprouse v. Astrue*, No. 5:10-CV-00113, 2011 WL 2441263, at *2 (W.D. Va. June 13, 2011).

If work is done under special conditions, the ALJ "may find that it does not show that you have the ability to do substantial gainful activity." § 404.1573(c). Special conditions include, but are not limited to: requiring and receiving special assistance from other employees in order for the claimant to perform his work; working irregular hours or

7

taking frequent rest periods; being provided with special equipment or assigned work especially suited for the claimant's impairment; being able to work only because of specially arranged circumstances; being permitted to work at a lower standard of productivity or efficiency; and/or being given the work due to a familial relationship, or association with the employer. § 404.1573(c)(1–6). "However, work done under special conditions may show that [the claimant has] the necessary skills and ability to work at the substantial gainful activity level." *Id.* To rebut the presumption of SGA, affirmative evidence must be provided to the ALJ to prove the existence of special conditions. *See Payne*, 946 F.2d at 1084; SSR 76-4a.

To qualify as past relevant work, the work experience must last long enough for the employee to learn the job. § 416.965(a). According to the *Dictionary of Occupational Titles*, a security guard has a vocational preparation level of three, calling for one to three months to learn the job. *Dictionary of Occupational Titles* 372.667-034 (Rev. 2003); POMS § DI 25001.001(A)(77), https://secure.ssa.gov/apps10/poms.nsf-/lnx/0425001001 (last visited August 21, 2020); *see Coleman v. Astrue*, No. 4:12-cv-00008, 2012 WL 5398005, at *3 (W.D. Va. Nov. 2, 2012).

Plaintiff worked as a security guard from August 1, 2010 to July 15, 2012. (R. at 195, 245.) This time period was well within fifteen years of the expiration of the date last insured, December 31, 2017. (R. at 24–26, 195, 245.) The ALJ correctly concluded that because Plaintiff worked for approximately two years in this position with a specific vocational preparation of three, he worked long enough to learn the job. (R. at 24 (citing

POMS § DI 25001.001(A)(77)).)  Further, Plaintiff did not contest this issue upon his appeal.  (*See* Pl.'s Mem. at 3–5.)

Plaintiff's biweekly salary ranged from $1,400.00 to $2,000.00, which equates to $2,800.00 to $4,000.00 per month.  (R. at 243.)  As the SGA monthly amount was only $1,000.00 for 2010 and 2011, the ALJ concluded that Plaintiff earned over the guideline amount as a security guard, thus creating the presumption of SGA.  (R. at 25.)  However, Plaintiff's employer indicated that Plaintiff was paid a higher than average wage as an accommodation, as the typical security guard earns $14.00 per hour.  (R. at 245; *see* Pl.'s Mem. at 3.)  Assuming that Plaintiff's salary was an accommodation, the ALJ found that Plaintiff would make between $1,344.00 to $1,680.00 monthly at the reduced rate of $14. (R. at 25, 245.)  This unaccommodated pay was still greater than the $1,000.00 monthly SGA.  (R. at 25, 245.)  Thus, the ALJ concluded that even if Plaintiff was accommodated, the typical salary of $14 would surpass the SGA threshold.  (R. at 25, 245.)

Plaintiff argues that the presumption of SGA is rebutted as he worked under "special conditions," delineated above.  (Pl.'s Mem. at 3–4 (citing 20 C.F.R. § 404.1573(c)).)  To support his allegation, Plaintiff's former employer submitted a statement to the ALJ, and Plaintiff provided a payroll transaction list detailing his earnings while working.  (R. at 243, 245.)  The documentation showed that Plaintiff earned between $1,400.00 and $2,000.00 biweekly.  (R. at 242–43.)  Plaintiff's employer indicated that Plaintiff was paid more than another employee in a similar position, writing in her statement that Plaintiff "received extra help/lower productivity allowed due to

changes in physical ability.  Continued to work and help with the security advisory until

not able to be productive and reliable due to frequent absences." (R. at 244–45.)

Plaintiff argued that the ALJ did not discuss the regulatory factors that

accommodated Plaintiff's work. (Pl.'s Mem. at 4.)  However, the only document

providing support for Plaintiff's "special conditions" was the employer's statement. (R.

at 25, 244–48.)  The ALJ informed Plaintiff that he may: submit additional

documentation, request a supplemental hearing, submit additional evidence such as

written or oral statements about the facts or the law; and request an opportunity to

question witnesses. (R. at 246.)  The ALJ even stated that the Plaintiff may request the

ALJ to subpoena witnesses or records for the full presentation of the case. (R. at 247.)

Plaintiff was given ten days to submit or request further documentation, but he did not

submit any additional evidence to support or corroborate his claims. (R. at 25, 246–47.)

As a result, Plaintiff failed to provide sufficient evidence or proof that his work was

accommodated or subsidized as the provided documentation merely stated that Plaintiff

received accommodations without explaination or description.   (R. at 25.)  Therefore,

the Court finds that the ALJ did not err in finding that Plaintiff's prior work as a security

guard was past relevant work as the finding is supported by substantial evidence.

## B.  The ALJ provided sufficient reasons for rejecting the opinions of Dr. Powers, Dr. Monteiro, and Toshal Thanawala, DPT.

Plaintiff's second assignment of error is that the ALJ erred in discounting the

opinions of Dr. Graham Powers, Dr. Glen Monteiro, and Toshal Thanawala, DPT. (Pl.'s

Mem. at 8–14.)  Specifically, Plaintiff contends that the ALJ would have found greater

limitations that precluded the performance of SGA had the ALJ conducted a proper evaluation of the treating and examining source opinions. (*Id.* at 14.) Defendant asserts that the ALJ reasonably assigned the opinions little or partial weight, and thus, substantial evidence supports the ALJ's determination. (Def.'s Mem. at 21–22.)

As part of the sequential analysis, the ALJ analyzes the claimant's medical records and medical evidence from any consultative examinations or medical expert evaluations that the ALJ ordered to determine whether the claimant has a medically-determinable severe impairment that would significantly limit the claimant's physical or mental ability to do basic work activities. §§ 404.1512, 404.1527, 416.912, 416.927. When the record contains multiple consistent medical opinions—including those from Plaintiff's treating sources, consultative examiners, or other sources—the ALJ makes findings based on that evidence. §§ 404.1527(c), 416.927(c). If, however, a medical opinion or other evidence is inconsistent, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. §§ 404.1527(c)(2)–(6), (d), 416.927(c)(2)–(6), (d).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded. *Id.* In making explaining the decision, "the ALJ must build an accurate

and logical bridge from the evidence to [the] conclusion." *Monroe v. Colvin*, 826 F.3d

176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

Under the regulations, only an "acceptable medical source" may be considered a

treating source that offers an opinion entitled to controlling weight. SSR 06-3p.[4]

Acceptable medical sources include licensed physicians, licensed or certified

psychologists, and certain specialists depending on the claimed disability.

§§ 404.1513(a), 404.1527(a), 416.913(a), 416.927(a). Opinions from "other sources,"

such as nurse-practitioners, physician's assistants, or therapists, may also be considered

under the regulations. SSR 06-03p; §§ 404.1527(f), 416.927(f).[5]

A treating source's opinion must be given controlling weight if it is well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence in the record. §§ 404.1527(c)(2),

416.927(c)(2); *see Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76 F.3d

at 590; SSR 96-2p. Further, the ALJ is not required to accept opinions from a treating

---

[4] Effective March 27, 2017, the SSA rescinded SSR 96-2p and 06-3p and incorporated some of the Rulings into 20 C.F.R. §§ 404.1527(f), 416.927(f). 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017). Plaintiff filed his claims on March 26, 2015, prior to this regulation taking effect. (R. at 225.) The Supreme Court requires that Congress expressly convey an agency the power to promulgate retroactive rules. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Congress has not explicitly granted retroactive rulemaking power to the Agency. 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting retroactive rulemaking power). Thus, the Agency does not have the power to engage in retroactive rulemaking. *See id.* Because the regulation does not have retroactive effect, SSR 06-03p applies to Plaintiff's claim.

[5] The regulations detail that "other sources" include medical sources that are not considered "acceptable medical sources" under 20 C.F.R. §§ 404.1527(f) and 416.927(f). The given examples are a non-exhaustive list. SSR 06-03p.

source in every situation, such as when: the source opines on the issue of whether the claimant is disabled for purposes of employment, an issue reserved for the Commissioner; the treating source's opinion is inconsistent with other evidence; or the opinion is not otherwise well-supported.  §§ 404.1527(c)(3)–(4), (d), 416.927(c)(3)–(4), (d); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."); *see also Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

The ALJ's assignment of weight must be sufficiently specific "to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . source's medical opinion and the reasons for that weight." SSR 96-2p (discussing affording weight to the treating physician); *see Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). The ALJ must consider the following factors when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors.  §§ 404.1527(c), 416.927(c).  However, those same regulations specifically vest the ALJ—not the treating source—with the authority to determine whether a claimant is disabled as that term is defined under the Act.  §§ 404.1527(d)(1), 416.927(d)(1).  Although the regulations

13

explicitly apply these enumerated factors only to treating sources, those same factors may be applied in evaluating opinion evidence from "other sources." SSR 06-03p.

On July 25, 2017, Plaintiff visited Dr. Powers, his primary care physician, for a musculoskeletal evaluation. (R. at 451–53.) Dr. Powers noted Plaintiff had back pain, leg weakness, and significantly reduced range of motion. (R. at 451.) Even so, Dr. Powers found Plaintiff could stand, walk, and sit for two hours of an eight-hour workday, but that Plaintiff needed to walk periodically throughout the day and use a cane or assistive device. (R. at 451–53.) He further opined that Plaintiff occasionally had the ability to bend and twist at the waist. (R. at 451–53.) Lastly, Dr. Powers found that Plaintiff would be absent from work more than three times a month due to Plaintiff's impairments or treatment. (R. at 451–53.) While Dr. Powers had treated Plaintiff for over ten years, Plaintiff had not visited Dr. Powers for over two years prior to this appointment. (R. at 451–53.)

Plaintiff met with Dr. Monteiro on August 29, 2015, to complete a Medical Consultant Report. (R. at 307–11.) Dr. Monteiro found Plaintiff could stand, walk, and sit for six hours of an eight-hour workday and did not need an assistive device to ambulate. (R. at 309–10.) Dr. Monteiro also found Plaintiff could handle, grasp, and touch frequently, carry ten pounds occasionally, and carry less than or equal to ten pounds frequently. (R. at 310.) Although Plaintiff could also frequently stoop, crouch, and bend, Dr. Monteiro opined that Plaintiff may face limitations during flare ups of his back issues despite having no red flags of acute back pain. (R. at 309–10.)

14

On May 8, 2017, Plaintiff met with Thanawala, DPT, to complete an outpatient physical therapy evaluation and plan of treatment. (R. at 429–38.) Thanawala found that Plaintiff had a 46% disability. (R. at 433.) Plaintiff's mobility assessment showed he was completely independent in all basic and additional mobility categories, scoring an 84 out of 84. (R. at 434.) Plaintiff reported his current living environment as: "lives with wife . . . performs yard work, has to lift logs, and likes riding motorbikes." (R. at 432.) Thanawala set short and long-term goals for Plaintiff, and Plaintiff's own goals included decreasing pain and being able to ride his motorbike for long distances. (R. at 431.)

The ALJ assigned Dr. Powers's and Thanawala's, DPT, opinions little weight and Dr. Monteiro's opinion partial weight, reasoning that each opinion is inconsistent with the objective medical records. (R. at 20, 22–23.) The ALJ noted the specific inconsistencies of each opinion with Plaintiff's minimal and conservative treatment. (R. at 23.) The ALJ's thorough explanations are legally sufficient and "build . . . the logical bridge" necessary for this Court to perform a meaningful review. *See Monroe*, 826 F.3d at 189. Therefore, the ALJ did not err in finding Dr. Powers's, Dr. Monteiro's, and Thanawala's treating opinions deserved partial and little weight due to their inconsistency with the objective medical records.

Substantial evidence supports the ALJ's assignment of limited weight to Dr. Powers's, Dr. Monteiro's, and Thanawala's, DPT, opinions. The weight of the objective evidence reflects that Plaintiff is capable of performing light work. (R. at 20.) As the ALJ found, Plaintiff is able to stand to take a shower, prepare simple meals, use a microwave, perform yard work, and lift logs; he is able to live independently and enjoys

15

to ride motorbikes. (R. at 22, 23, 308, 432.) Further, during the hearing on August 18,

2017, Plaintiff testified that: "I used to be an avid motorcycle rider. I haven't touched it in

two years. 50 miles in two years. I was an avid golf player. Not played in five years." (R.

at 45, 66–67.) The ALJ found that Plaintiff's ability to maintain such a lifestyle belies

opinions of his disability. (R. at 22–23.)

Moreover, Plaintiff's entire treatment plan consisted of conservative treatments:

home exercise, prescription medication, brief physical therapy, minimal doctors' visits,

and one injection. (R. at 20–24.) The ALJ's finding is buttressed by the fact that

Plaintiff's providers consistently recommended these treatments and did not advise

Plaintiff to seek aggressive treatment. (R. at 80–81, 254, 256, 277, 305, 316, 318, 427,

431, 435–38, 442.) Plaintiff's evaluations mostly described "normal range of motion,

strength tone, motor and sensory function, reflexes, gait, and coordination." (R. at 256,

262, 270, 280, 282, 288, 293, 301, 309, 426.) With the conservative treatment, the ALJ

could reasonably infer that Plaintiff's impairments were not as severe as he, Dr. Powers,

Dr. Monteiro, or Thanawala, DPT, assessed. *See Dunn*, 607 F. App'x at 274–75.

The ALJ assigned Dr. Monteiro's opinion partial weight. (R. at 22.) The portion

of his opinion relating to Plaintiff's ability to stand, walk, and sit for six hours is

consistent with the objective medical records. (R. at 22, 304–06.) This opinion is

consistent with the radiological evidence of Plaintiff's conditions and his minimal

treatment. (R. at 20–24, 80–81, 254, 256, 277, 305, 316, 318, 427, 431, 435–38, 442.)

Further, this opinion is consistent with Plaintiff's description of his current living

situation to the physical therapist. (R. at 23, 432.) However, Dr. Monteiro's opinions of

Plaintiff's ability to lift and carry only ten pounds—along with the limitations for

handling, grasping, and touching—are inconsistent with the objective medical records

showing "normal range of motion, strength tone, motor and sensory function, reflexes,

gait, and coordination." (R. at 20–24, 253, 256, 262, 270, 280, 282, 288, 293, 301, 309,

426.) The ALJ properly assigned Dr. Monteiro's opinions partial weight as only portions

were consistent with the objective medical records. *See* §§ 404.1527(c), 416.927(c); *e.g.,*

*Johnson*, 434 F.3d at 654–57; *Chandler v. Colvin*, No. 1:15-CV-214, 2017 WL 6539983,

at *10–13 (N.D. W. Va. Jan. 31, 2017).

The ALJ assigned Dr. Powers's opinion little weight. (R. at 23.) Dr. Powers's

opinions received little weight because he had no treating records of Plaintiff since March

2015; his opinions were also inconsistent with Plaintiff's conservative treatment and

Plaintiff's description of his current living situation. (R. at 20–24, 451–53, 80–81, 254,

256, 277, 305, 316, 318, 427, 431–32 435–38, 442.) Dr. Powers also opined that Plaintiff

needed a cane, which was inconsistent with the medical records that indicated no use or

need for a cane. (R. at 23, 260–303, 307–11, 421–53.) The ALJ properly assigned Dr.

Powers's opinion little weight given its inconsistency with the objective medical records.

*See* §§ 404.1527(c), 416.927(c); *e.g., Johnson*, 434 F.3d at 654–57; *Chandler*, 2017 WL

6539983, at *10–13.

The ALJ assigned Thanawala's, DPT, opinion minimal weight. (R. at 23.)

Thanawala opined Plaintiff had a 46% disability. (R. at 23, 433.) However, the ultimate

conclusion of disability is reserved to the Commissioner of Social Security. (R. at 23

(citing 20 C.F.R. § 404.1527(d)(1), (d)(3)).) Further, Thanawala's, DPT, opinion is

inconsistent with Plaintiff's minimal treatment, and minimal radiological and clinical findings. (R. at 20–24.) The ALJ properly assigned Thanawala's, DPT, opinion little weight as it was entirely inconsistent with the objective medical records. *See* §§ 404.1527(c), 416.927(c); *e.g., Johnson*, 434 F.3d at 654–57; *Chandler*, 2017 WL 6539983, at *10–13.

This Court reminds Plaintiff that "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Id.* at 274. When taken as a whole, Plaintiff's treatment record is consistent with the less restrictive findings that the ALJ described in her written findings, permitting Plaintiff to perform light work. Substantial evidence in Plaintiff's treatment record therefore supports the ALJ's assignment of limited weight to Dr. Powers's, Dr. Monteiro's, and Thanawala's, DPT, opinions.

Accordingly, the Court finds that the ALJ did not err in giving reduced weight to the opinions of Dr. Powers, Dr. Monteiro, and Toshal Thanawala, DPT. The Court holds that the ALJ's conclusion that Plaintiff was not disabled is supported by substantial evidence.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment will be denied (ECF No. 13), Plaintiff's Motion for Remand will be denied as moot (ECF No. 14), Defendant's Motion for Summary Judgment will be granted (ECF No. 16), and the final decision of the Commissioner will be affirmed.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/
Henry E. Hudson
Senior United States District Judge

Date: August 24, 2020
Richmond, Virginia